Eric Slocum Sparks
Arizona State Bar No. 11726
LAW OFFICES OF ERIC SLOCUM SPARKS, P.C.
110 South Church Avenue #2270
Tucson, Arizona 85701
Telephone (520) 623-8330
Facsimile (520) 623-9157
law@ericslocumsparkspc.com

Attorney for Debtor

IN THE UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF ARIZONA

In re:

BRIAN K. BISSELL AND
TRACY L. BISSELL,

    Debtors.

No. 4:12-bk-00034-EWH

(Chapter 11)

DEBTORS' FIRST PLAN OF REORGANIZATION DATED May 10, 2012

    Brian K. Bissell and Tracy L. Bissell, (hereinafter "Debtors"), hereby submit this Plan of Reorganization in accordance with 11 U.S.C. §1121(a).

## I. DEFINITIONS

    As utilized in this Plan of Reorganization (hereinafter "Plan") and in the Disclosure Statement (hereinafter "Disclosure Statement") which accompanies this Plan of Reorganization, the following definitions apply to the following terms:

    1. "Adequate information" means information that would enable a hypothetical reasonable investor typical of holders of claims or interest of the Debtors' estate, to make an informed judgment about the Debtors' Plan of Reorganization.

    2. "Allowed and Approved Claim" shall mean a timely filed Proof of Claim pursuant to an Order from the Court setting a bar date to which that claim should be filed and no objection to the claim having been filed. If an objection to a claim is filed, said claim will be allowed to the extent ordered by the Court.

    3. "Bankruptcy Code" shall mean the Bankruptcy Code as set forth in Title 11 of the United

1

Case 4:12-bk-00034-SHG    Doc 56    Filed 05/10/12    Entered 05/10/12 14:15:44    Desc
Main Document    Page 1 of 12

States Code.

4. "Bankruptcy Court" shall mean the United States Bankruptcy Court for the District of Arizona.

5. "Confirmation of the Plan" shall mean the entry of an order by the Bankruptcy Court confirming the Plan or Reorganization in accordance with §1129 of the Bankruptcy Code.

6. "Consummation of the Plan" means the accomplishment of all things required or provided for under the terms of the Plan.

7. "Court" shall mean the United States Bankruptcy Court for the District of Arizona.

8. "Creditors" shall mean all persons holding claims for secured and unsecured obligations, liabilities, demands or claims of any nature whatsoever against the Debtor arising at any time prior to confirmation of the Plan and administrative creditors.

9. "Debtors" shall mean the petitioner in the above-captioned Bankruptcy case.

10. "Disclosure Statement" shall mean this Disclosure Statement (hereinafter "Disclosure Statement") filed in this case approved, after notice and a hearing by the Court as being in conformity with §1125 of the Bankruptcy Code.

11. "Effective Date" shall mean the later of (a) the first business day following the **60th** day after entry of the Court of an order confirming this Plan, or (b) the first business day after such order has become final and unappealable; provided however, no appeal of said order is pending; provided further, the Debtor may waive the condition that no appeal of the order of confirmation be pending by a writing duly executed by the Debtor and filed with the Court on or before the date which but for the pendency of appeal would become the effective date of the Plan, and in the event that said condition is timely waived by the Debtor, the Plan shall become effective as provided herein notwithstanding the pendency on said date of an appeal or appeals; in the event that said condition is not timely waived, the Plan shall become effective on the first business day after an appeal is no longer pending.

12. "Petition" means the original Chapter 11 Petition filed by the Debtor.

13. "Plan" shall mean the Plan of Reorganization accompanying the Disclosure Statement as it may be amended, modified and/or supplemented pursuant to which the Debtors propose payment in

2

Case 4:12-bk-00034-SHG    Doc 56    Filed 05/10/12    Entered 05/10/12 14:15:44    Desc
Main Document    Page 2 of 12

whole or in part of creditors' claims.

14. "Plan distribution date" shall be a date that ends with the first full calendar quarter after the date that the Chapter 11 Plan is confirmed by the Court, which the Debtors project to be September, 2012.

15. All other terms not specifically defined by this Disclosure Statement shall have the meaning as designated in §101 of the Bankruptcy Code or, if not contained therein, their ordinary meaning.

## II. CLASSES OF CLAIMS

Administrative Claims.

These claims consist of the expenses of administration of the estate including attorney's fees for Debtors' counsel and any unpaid fees to the U.S. Trustee. The Debtor estimates these costs and expenses may be in excess of $15,000.00.

Tax Claims.

As reflected in the original schedules filed by the Debtor, Debtor estimated tax claims in the amount of $50,836.00. This does not include any amounts that may be due for ad valorem claims which are secured against real property, if any.

Secured Claims.

As reflected in the original schedules filed by the Debtor, Debtor estimated secured claims in the amount of $662,000.00.

Unsecured Claims.

As reflected in the schedules filed by the Debtor, Debtor estimated unsecured claims in the amount of $21,200.00, which does not include any deficiency amounts for secured creditors.

Domestic Support Claims.

As reflected in the schedules filed by the Debtors, there are no support orders against the Debtors.

## III. TREATMENT OF CLAIMS NOT IMPAIRED UNDER THE PLAN

Classes 1, 6 and 10 are not impaired under the Plan in that the Plan does not alter the legal or contractual rights to which the holders of such claims are entitled and/or the Bankruptcy Code permits

3

Case 4:12-bk-00034-SHG    Doc 56    Filed 05/10/12    Entered 05/10/12 14:15:44    Desc
Main Document    Page 3 of 12

payment over an extended period of time and/or the holder of the claim has agreed to a different treatment.

## IV. TREATMENT OF IMPAIRED CLAIMS UNDER THE PLAN

Classes 2, 3, 4, 5, 7, 8, and 9 are impaired under the Plan in that the Plan does alter the legal or contractual rights to which the holders of such claims are entitled and/or the Bankruptcy Code permits payments over an extended period of time and/or the holder of the claims has agreed to a different treatment.

## V. CLASSES OF CLAIMS

The Plan provides for 10 classes of claims to be paid or administered in the following manner:

5.1 <u>Class 1 - Administrative Claims</u>.

These claims are for the expenses of administration of the estate, including attorney fees for Debtors' counsel in the approximate sum of $15,000.00 and unpaid fees to the U.S. Trustee, if any. Debtors believe, at the time that the Debtor's Chapter 11 Plan is confirmed, that there will be an administrative expense claim in the approximate amount of $15,000.00. This claim shall be paid in cash, or in the amounts allowed by the Court upon the Plan distribution date unless otherwise agreed to between the Debtors and the administrative creditor. **(This class is not impaired.)**

5.2 <u>Class 2 - Priority Claims of Governmental Units</u>.

    A.    <u>Classification</u>: Class 2 claims consists of all allowed claims of the United States Internal Revenue Service ("IRS") and/or State of Arizona, Department of Revenue ("AZDOR") and/or the Department of Economic Security ("ADES"), City of Tucson or other government agency which are entitled to priority pursuant to Section 507(a)(8) of the Bankruptcy Code except ad valorem taxes. <u>Debtors are aware of a proof of claim filed in this class by IRS in the amount of $78,258.13 and a proof of claim filed by AZDOR in the amount of $4,752.98.</u>

    B.    <u>Impairment</u>: Class 2 is impaired.

    C.    <u>Treatment</u>: Each holder of a Class 2 allowed claim shall retain its claim, in accordance with Section 1129 of the Bankruptcy Code. The claim shall bear simple interest at a fixed rate equal to that rate which would be required to be paid as of the Effective Date under Section 6621

4

Case 4:12-bk-00034-SHG    Doc 56    Filed 05/10/12    Entered 05/10/12 14:15:44    Desc
Main Document    Page 4 of 12

and/or 6622 of the Internal Revenue Code, or such other interest rate as the Bankruptcy Court determines is sufficient to confer upon the tax note a value as of the Effective Date equal to the principal amount of such claim. The allowed claim shall be payable in equal monthly installments of principal, along with accrued interest, in deferred cash payments over a period not to exceed five years from the date of petition. The first payment shall commence on the first day of the month immediately following the month of the Effective Date. The claim is subject to prepayment at any time without penalty or premium and shall have such other terms as are required by law.

  5.3 <u>Class 3 - Secured Ad Valorem Real Property Tax Claims</u>

    A. <u>Classification</u>: Class 3 shall consist of pre-petition allowed Ad Valorem Real Property Tax Claims which are secured by liens on real property. <u>The Debtors believe there are no claims in this class. If there are allowed claims in this class, they will be treated and paid as follows:</u>

    B. <u>Impairment</u>: Class 3 is impaired.

    C. <u>Treatment</u>: Each holder of a Class 3 allowed claim shall retain its lien having an aggregate principal amount sufficient to satisfy, in accordance with Section 1129 of the Bankruptcy Code, the allowed claim. Such claim shall bear simple interest at a statutory rate of 16% per annum required to be paid as of the Effective Date, or such other interest rate as the Bankruptcy Court determines is sufficient to confer upon the tax claim a value as of the Effective Date equal to the principal amount of such claim charged by Pima County or the statutory rate of interest. Payments shall be made in equal monthly installments of principal, along with accrued interest, in deferred cash payments over a period not to exceed five years from date of petition. The claim is subject to prepayment at any time without penalty or premium and shall have such other terms as are required by law.

  5.4 Class 4 - Secured Claim of Citimortgage, Inc. ("Citi")

    A. <u>Classification</u>: Class 4 consists of the first lien claim of Citi secured by the real property located at 2330 N. Tanque Verde Place, Tucson, AZ 85749, the Debtors' principal residence. This claim is evidenced by a promissory note and deed of trust. <u>Debtors estimate the claim in this class at $463,900.00.</u>

5

B. <u>Impairment</u>: Class 4 is impaired.

C. Treatment: Debtors will continue to pay pursuant to the existing mortgage contract. Arrears, if any, will be paid in sixty (60) equal monthly installments beginning 30 days after the Effective Date of the Plan.

5.5 Class 5 - Second Lien Claim of GMAC Mortgage, LLC ("GMAC")

A. <u>Classification</u>: Class 5 consists of the allowed second lien claim of GMAC to the extent of the value of the secured creditor's interest in the Debtors' interest in the real property located at 2330 N. Tanque Verde Place, Tucson, AZ 85749, the Debtors' principal residence. This claim is evidenced by a promissory note and deed of trust. <u>Debtors are aware of a proof of claim filed in this class in the amount of $141,195.74. Debtors believe this claim is wholly unsecured.</u>

B. <u>Impairment</u>: Class 5 is impaired.

C. <u>Treatment</u>: The Debtors and the Class 5 creditor have Stipulated to the following treatment, entered as an Order of this Court on April 16, 2012.

    i. GMAC's claim shall be allowed as a non-priority general unsecured claim;

    ii. The avoidance of GMAC's Second Deed of Trust is contingent upon the Debtors' completion of their Chapter 11 Plan and the Debtors' receipt of a Chapter 11 discharge;

    iii. Upon receipt of the Debtors' Chapter 11 discharge and completion of their Chapter 11 Plan, this Stipulation and Order thereon may be recorded by the Debtors with the County Recorder's Office;

    iv. GMAC shall retain its lien for the full amount due under the Subject Loan in the event of either the dismissal of the Debtors' Chapter 11 case or the conversion of the Debtors' Chapter 11 case to any other Chapter under the United States Bankruptcy Code;

    v. In the event that the holder of the first lien on the Subject Property forecloses on its security interest and extinguishes GMAC's Second Deed of Trust prior to the Debtors' completion of their Chapter 11 Plan and receipt of a Chapter 11

|   |   |   |
|---|---|---|
| 1 |   | discharge, GMAC's lien shall attach to the surplus proceeds of the foreclosure |
| 2 |   | sale for the full amount of the Subject Loan balance at the time of the sale; |
| 3 | vi. | The execution of the Stipulation constitutes a vote by GMAC of its claim in |
| 4 |   | favor of Debtors' Plan; and |
| 5 | vii. | GMAC's attorney's fees incurred incident to the action may be added to |
| 6 |   | GMAC's unsecured claim. |

5.6  Class 6 - Secured Claim of Nissan-Infinity LT ("Nissan")

    A.    <u>Classification</u>: Class 6 consists of the allowed secured claim of Nissan to the extent of the value of the secured creditor's interest in the Debtors' interest in the personal property known as a 2010 Infinity G37 Sedan. This claim is evidenced by a lease agreement. <u>Debtors are aware of a proof of claim filed in this class in the amount of $12,224.96.</u>

    B.    <u>Impairment</u>: Class 6 is not impaired.

    C.    <u>Treatment</u>:  The Class 6 claim will continue to be paid pursuant to the existing lease agreement.

5.7  Class 7 - Secured Claim of Tucson Federal Credit Union ("TFCU")

    A.    <u>Classification</u>: Class 7 consists of the allowed secured claim of TFCU to the extent of the value of the secured creditor's interest in the Debtors' interest in the personal property known as a 2010 Chevrolet Silverado 2500 Crew Cab pickup. This claim is evidenced by a security agreement. <u>Debtors are aware of a proof of claim filed in this class in the amount of $40,837.73. Debtors believe the current market value of the property is $26,000.00. Debtors believe this claim may not be fully secured.</u>

    B.    <u>Impairment</u>: Class 7 is impaired.

    C.    <u>Treatment</u>:  The Class 7 creditor will be paid the current market value of its allowed secured claim in 60 equal monthly installments at four and a half percent (4.5%) interest beginning 60 days after the Effective Date. Any deficiency claim of the Class 9 creditor shall be treated as a Class 10 unsecured claim and paid pro-rata from Debtors' disposable income.

    <u>5.8  Class 8 - Unsecured Deficiency Claims and Unsecured Claims.</u>

7

      A. <u>Classification</u>: Class 8 consists of all unsecured deficiency claims and unsecured claims against the debtor. <u>Debtor estimates these claims at approximately $175,000.00.</u>

      B. <u>Impairment</u>: Class 8 is impaired.

      C. <u>Treatment</u>: All allowed and approved claims under this Class shall be paid the sum of $450.00 on a quarterly basis, *pro rata*, from Debtors disposable income, to be paid on the last day of each quarter, beginning with the quarter ending after the Effective Date and anticipated to be December 2012, and continuing each quarter thereinafter until the quarter ending September 30, 2017. Any liens held by the Class 8 creditors shall be null and void and removed as of the Effective Date.

    5.9 <u>Class 9 - Contingent, Unliquidated and Disputed Claims.</u>

      A. <u>Classification</u>: Class 9 consists of all contingent, unliquidated and disputed claims.

      B. <u>Impairment</u>: Class 9 is impaired.

      C. <u>Treatment</u>: Class 9 creditors shall receive no distribution under the Plan.

    5.10 <u>Class 10 - Debtors' Interest.</u>

      A. <u>Classification</u>: Class 10 consists of the interests of the debtors.

      B. <u>Impairment</u>: Class 10 is not impaired.

      C. <u>Treatment</u>: Debtors shall retain all of their legal and equitable interest in exempt and non-exempt assets of this estate, as all reconciliation issues have been met. All estate property shall vest in the Debtors at confirmation.

## **VI. DISPUTED CLAIMS**

Debtors reserve the right to verify and object to any proof of claim. Payment of disputed claims shall be made only after agreement has been reached between the Debtors and the Creditor or upon the order of the Court. Any and all objections to proofs of claim will be filed within sixty (60) days of the Effective Date of this plan or will be waived.

## **VII. EXECUTORY CONTRACTS**

The Debtors are assuming a vehicle lease with Nissan-Infinity LT.

8

## VIII. DOMESTIC SUPPORT OBLIGATIONS

As reflected in the schedules filed by the Debtors, there are no domestic support orders against the Debtors.

## IX. MEANS OF EXECUTION/PROJECTION

The Debtors will provide for payment of all timely filed and allowed claims over 60 months. The Debtors shall make payments in the sum of $450.00 per quarter to the Class 8 unsecured creditors, which shall be disbursed as set forth in the Plan  The source of the funds shall come from the Debtors' earned post-petition income and possibly from the refinancing or sale of property of the debtor. ***See*** 11 U.S.C. §1123(a)(8).

The 2005 BAPCPA amendments to the Bankruptcy Code added, among other things, section 1129(a)(15).  This section requires that upon the objection of an unsecured creditor to the debtor's plan, the debtor must either (A) pay the claim in full, or, (B) commit their disposable income to the plan payments for a minimum of 5 years, as determined by §1325(b)(2).  Although Debtors believe that projected disposable income is committed to the plan under the current projections, upon an objection to plan confirmation, Debtors will provide a schedule reflecting that projected disposable income has been committed to plan payments.

The Debtors reserve the right to accelerate payment under the Plan from financing obtained from third party financing, although currently Debtors have no plans to do so.  Debtors believe that by virtue of the Plan they will have the ability to pay all allowed and approved claims pursuant to the Plan or Reorganization.  The unsecured creditors will be paid a total of $9,000.00 under the Plan of Reorganization.

## X. QUARTERLY FEES AND REPORTS

Debtors shall continue to pay quarterly fees to the U.S. Trustee System until such time as a Final Decree has been entered in this matter by the Court, closing this Chapter 11 proceeding. Debtor shall continue to file monthly operating reports until such time as the Court enters an Order confirming this Chapter 11 Plan of Reorganization and/or the end of the calendar quarter in which the Plan was confirmed.  At such time, Debtor shall cease filing monthly operating reports and shall

9

begin filing quarterly post confirmation reports. These quarterly reports shall be filed until such time as a Final Decree has been entered in this matter by the Court, closing this Chapter 11 proceeding.

## XI. IMPLEMENTATION AND CONSUMMATION OF PLAN

The terms of the Plan subsequent to confirmation shall bind the Debtors, any entity acquiring property under the Plan, and creditor or claimant, whether or not such creditor or claimant has accepted the Plan. All property of the estate shall vest in the Debtors and shall be free from attachment, levy, garnishment or execution by creditors bound by the Plan.

Subsequent to confirmation of the Plan of Reorganization, the Debtors shall continue to engage in their business as presently conducted or in such form or manner as the Debtors may deem advisable. The Plan does not provide for the liquidation of all or substantially all of the property of the estate. Notwithstanding the foregoing, however, the Debtosr shall be free to operate in the ordinary course and may without any further order of the Court, convey, sell assign, purchase, or lease any property of or for the benefit of the estate.

It shall be the obligation of each creditor participating under the Plan to keep the Debtors advised of its current mailing address. In the event any payments tendered to creditors are mailed, postage prepaid, addressed (1) to the address specified in the Debtors schedules and statement, (2) to the address specified in any proof of claim filed by a creditor or claimant herein, or (3) to the address provided by any such creditor or claimant for purposes of distribution, and if subsequently the Post Office returns such distribution due to lack of insufficiency of address or forwarding address, the Debtors shall retain such distribution for a period of six (6) months. Thereafter, the distribution shall revert to the Debtor without further Order of the Court and be free and clear of any claim of the named distributee. The Debtors shall thereafter not be required to mail subsequent distributions to any creditor for whom a distribution has been returned by the Post Office. The Debtors reserves the right to modify the Plan in accordance with §1127 of the Bankruptcy Code. The Plan may be modified prior to confirmation provided that the Plan still complies with §1122 and §1123 of the Bankruptcy Code. The Plan may be modified subsequent to confirmation and before substantial consummation of the Plan under such circumstances as may warrant such under §1123 of the

10

Bankruptcy Code. Any holder of a claim or interest that has been previously accepted or rejected under a confirmed Plan, shall be deemed to have accepted or rejected any subsequently modified Plan unless the holder of such claim or interest changes its acceptance or rejection of the Plan within the time fixed by the Court.

## XII. DEFAULT

The Debtors' failure to make any payment due under the Plan within sixty (60) days after demand for payment after its due date shall constitute a default unless the Debtors and the affected creditor agree to delayed payment.

Upon default, creditors may pursue any remedy provided by the state or federal law, including foreclosing any security interest, suing on any promissory note issued or continued in effect under the Plan.

## XIII. RETENTION OF JURISDICTION

The Bankruptcy Court will retain jurisdiction over this case for purposes of determining the allowance of claims or objection to claims. The Court will also retain jurisdiction for purposes of fixing allowances for compensation and/or for purposes of determining the allowability of any other claimed administrative expenses. The Court will also retain jurisdiction for the purpose of establishing bar dates and making a determination with respect to all disputed claims. Finally, the Court shall retain jurisdiction for purposes of determining any dispute arising from the interpretation, implementation or consummation of the Plan and to implement and enforce the provisions of the Plan. Notwithstanding anything to the contrary contained herein, the Debtors shall not be bound by estoppel, the principles of *res judicata* or collateral estoppel with respect to any term or provision contained herein in the event the Plan is not confirmed.

///
///
///
///
///

The Court may enter a Final Decree and retain jurisdiction over this case to reopen the case to provide relief including the entering of a Discharge Order.

DATED May 10, 2012

LAW OFFICES OF
*ERIC SLOCUM SPARKS, P.C.*

/s/ Sparks AZBAR #11726
Eric Slocum Sparks
Attorney for Debtor

COPIES of the foregoing
mailed/delivered/faxed on
May 10, 2012 to:

United States Trustee
230 N. First Ave. #204
Phoenix, AZ 85013

Howard A. Chorost, Esq.
Howard A. Chorost, P.C.
21 East Speedway Blvd.
Tucson, AZ 85705
*Attorney/s for Tucson Federal Credit Union*

Jamin S. Neil, Esq.
PITE DUNCAN, LLP
4375 Jutland Drive, Suite 200
San Diego, CA 92177
*Attorney/s for GMAC Mortgage*

/s/ L. Anderson